UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ALLEN WILLIFORD and LYNDA WILLIFORD,<br><br>          Plaintiffs,<br><br>  - against -<br><br>SYNGENTA CROP PROTECTION LLC, CHEVRON U.S.A., INC., and COUNCIL-OXFORD, INC.,<br><br>          Defendants. | Case No. _____<br><br>(Formerly Case No. 21-CA-006219 in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida) |

## NOTICE OF REMOVAL

Defendants Syngenta Crop Protection LLC ("Syngenta") and Chevron U.S.A. Inc. ("Chevron"), pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1367, hereby remove the above-captioned action from the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, case number 21-CA-006219, to the United States District Court for the Middle District of Florida.  In support of removal, Syngenta and Chevron provide this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basis Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) ("§ 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

## NATURE OF REMOVED ACTION

1.      On August 9, 2021, Plaintiffs filed this action, *Allen Williford and Lynda Williford v. Syngenta Crop Protection LLC et al.*, in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, case number 21-CA-

006219, alleging claims based upon exposure to products containing paraquat and Plaintiff Allen Williford's subsequent diagnosis with Parkinson's disease.

2.     The Complaint asserts six causes of action against Syngenta, Chevron, and Council-Oxford, namely: (i) design defect; (ii) failure to warn; (iii) negligence; (iv) breach of implied warranty of merchantability; (v) punitive damages; and (vi) loss of consortium.

3.     The thrust of Plaintiffs' allegations is that by manufacturing, distributing, or selling products containing paraquat, Syngenta and Chevron exposed Mr. Williford to an increased likelihood of developing Parkinson's disease, a disease that he was later diagnosed with.

4.     This alleged conduct purportedly harmed Plaintiffs in the form of physical pain, mental anguish, loss of consortium, and medical expenses.

5.     Over 250 similar cases—alleging Parkinson's disease based on past exposure to paraquat—have been filed against Syngenta and Chevron in federal courts around the country, and consolidated into a multidistrict litigation in the Southern District of Illinois. *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021).  That MDL is still in its early stages, with new cases regularly being transferred to it.  By filing this case in state court, Plaintiffs are seeking to avoid the MDL, which is designed to ensure the most efficient and orderly administration of a large number of cases presenting common issues of law and fact.

6.     This case is subject to removal on the grounds of diversity jurisdiction, however, because there would be complete diversity of citizenship between

Plaintiffs and Defendants but for the joinder of Council-Oxford as a Defendant. But the claims against Council-Oxford are a transparent and egregious attempt by Plaintiffs to defeat Defendants' right to remove this case to federal court. Indeed, Plaintiffs expressly admit that they are forum shopping when they allege that Council-Oxford is "a local defendant for purposes of defeating removal and diversity jurisdiction." Compl. ¶ 7. As a result, the Court should sever the claims against Council-Oxford from the claims against Syngenta and Chevron in order to preserve federal jurisdiction over the latter and defeat Plaintiffs' efforts to undermine federal jurisdiction over this case.

7. Plaintiffs' claims are also removable because they arise under federal law. Plaintiffs' claims are premised on the breach of duties governed by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 *et seq.* ("FIFRA"), as regulated and enforced by the Environmental Protection Agency ("EPA"). *See, e.g.*, 7 U.S.C. § 136a (EPA must register any pesticide, including herbicides, before it is sold domestically after weighing the economic, social, and environmental benefits and costs of the product); *id.* § 136(q)(1)(F) (FIFRA empowers EPA to control warnings, directions, and packaging, and specifically mandates warnings for pesticides that are "adequate to protect health and the environment"); *id.* § 136j(a)(2)(G) (making it illegal to use any pesticide "in a manner inconsistent with its labeling"); 40 C.F.R. § 152.160 (paraquat is a "restricted use" pesticide and may only be applied by a certified "restricted use" applicator or someone acting under a certified applicator's "direct supervision"); *id.* §§ 171.103, 171.105 (pesticide

applicators are taught to read and understand warnings and instructions for paraquat and must take "[m]easures to avoid or minimize adverse health effects").

8.    Because any duties relating to paraquat arise exclusively from federal law—FIFRA and its underlying regulations—alleged violations of federal law form the basis for the underlying claims. It would be illegal for any state to require that a paraquat label include a warning about the risk of developing Parkinson's disease because EPA has determined that no causal link exists. *See* 7 U.S.C. § 136v(b) (states are prohibited from imposing "labeling or packaging" requirements "in addition to or different from" those required under FIFRA); EPA, Paraquat Dichloride: Interim Registration Review Decision, Case No. 0262, at 18 (July 13, 2021), *available at* https://www.regulations.gov/document/EPA-HQ-OPP-2011-0855-0307 ("[T]he weight of evidence [is] insufficient to link paraquat exposure from pesticidal use of U.S. registered products to [Parkinson's disease] in humans.").

9.    Federal courts have routinely grappled with an important question that will be raised here: which state law claims regarding pesticide products are preempted under FIFRA. *See, e.g., Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993) (common-law tort claims based on inadequate labeling of pesticides preempted by FIFRA); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir. 1994) (common-law claims based upon manufacturer's alleged failure to properly label pesticides and to warn of their dangers preempted by FIFRA); *Lescs v. William R. Hughes, Inc.*, 168 F.3d 482 (4th Cir. 1999) (tort claims regarding injuries allegedly

caused by pesticide exposure preempted by FIFRA); *King v. E.I. Dupont De Nemours & Co.*, 996 F.2d 1346 (1st Cir. 1993) (FIFRA preempted state law tort claim due to failure to warn); *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1208 (9th Cir. 2002) (state law claims regarding pesticide manufacturer's label instructions preempted by FIFRA); *Nat'l Bank of Com. of El Dorado, Arkansas v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999) (inadequate labeling, failure to warn, and express and implead breach of warranty claims preempted by FIFRA); *Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207 (3d Cir. 2010) (failure to warn claims and claims based on alleged misrepresentation in pesticide marketing brochure not preempted).

10.     In accordance with 28 U.S.C. § 1446(a) and the Local Rules of this Court, a copy of the Complaint is attached as **Exhibit A** ("Compl."). A copy of the State Court Docket Sheet is attached as **Exhibit B**.  A copy of all other process, pleadings, and orders served on Syngenta and Chevron or otherwise on file with the state court are attached as **Exhibit C**. The Civil Cover Sheet is attached as **Exhibit D**. A copy of Defendant Council-Oxford's consent to the removal of this proceeding to this Court is attached as **Exhibit E**. *See* 28 U.S.C. § 1446(b)(2).

## **TIMELINESS OF REMOVAL**

11.     Syngenta was served with the Complaint on September 1, 2021. Council-Oxford was served with the Complaint on or about August 16, 2021. Chevron has not yet been served.  Defendants have not responded to the Complaint in state court.

12.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed because it is within 30 days of Syngenta being served.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

## PROPRIETY OF VENUE

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, where the state court action was pending prior to removal, is a state court within this federal district and division.

## BASIS OF REMOVAL
## Diversity Jurisdiction

14.     Removal is proper pursuant to 28 U.S.C. §§ 1332 and 1441 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

15.     Plaintiffs are both citizens of the state of Florida.  Compl. ¶ 2.

16.     Syngenta is an LLC with its headquarters in Greensboro, North Carolina.  Syngenta's sole member is Syngenta Seeds, LLC, which is headquartered in Downers Grove, Illinois.  The sole member of Syngenta Seeds, LLC is Syngenta Corporation, which is incorporated and headquartered in Delaware.

17.     Chevron is headquartered in San Ramon, California and incorporated in the state of Pennsylvania, and it is thus a resident of those two states.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (citing 28 U.S.C. § 1332(c)(1)).

18.     Therefore, complete diversity exists among the parties but for the joinder of Council-Oxford as a defendant, and Council-Oxford's residency should be excluded for the purposes of determining the existence of diversity jurisdiction.

19.     Council-Oxford's residency should be disregarded by this Court because it has been joined in this proceeding solely in an attempt to destroy diversity. *See, e.g., Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005) ("A common strategy employed by the plaintiffs . . . is to name local parties, . . . thus defeating [defendant's] right to remove a case to federal court."); *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) ("When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand.").

20.     The gravamen of Plaintiffs' Complaint is that Syngenta and Chevron manufactured and sold paraquat products that were unsafe, and allegedly caused Mr. Williford to develop Parkinson's disease.   Plaintiffs make no specific allegations or claims directed at Council-Oxford, except for alleging that it distributed paraquat products, and that it is "a local defendant for purposes of defeating removal and diversity jurisdiction."  Compl. ¶ 7.  That is a remarkable and telling admission, given the Eleventh Circuit's guidance that "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand." *Henderson v. Washington Nat'l Ins.*

*Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

21.     Courts may use Federal Rule of Civil Procedure 21 to sever non-diverse defendants from the case where they are neither necessary nor indispensable.  That Rule provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.  This Court thus has the "authority to allow a dispensable nondiverse party to be dropped at any time." *Luxor Agentes Autonomos de Investimientos, Ltda. v. Intertransfers, Inc.*, 638 F. App'x 925, 927 (11th Cir. 2016) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *see also Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F. 3d 1293, 1298 n.8 (11th Cir. 2016) (court may drop dispensable non-diverse parties "when necessary to establish federal subject-matter jurisdiction").

22.     Relevant here, a court applying this rule may "dismiss a dispensable party whose presence spoils diversity jurisdiction." *Buckley v. Control Data Corp.*, 923 F.2d 96, 97 (8th Cir. 1991); *see also Soberay Mach. & Equipment Co. v. MPF Ltd.*, 181 F.3d 759, 763 (6th Cir. 1999) ("[I]t is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity."); *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545–46 (6th Cir. 1994) ("[Rule 21] permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19."); *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980) (citing cases).

23.    Applying these principles, federal courts around the country have severed or dismissed dispensable, non-diverse defendants—like Council-Oxford here—to preserve the court's diversity jurisdiction. *See, e.g.*, *Clements v. Essex Ins. Co.*, No. 616CV574ORL37GJK, 2016 WL 3144151, at *3 (M.D. Fla. June 6, 2016) (dismissing nondiverse defendant pursuant to Rule 21); *Luxor Agentes*, 638 F. App'x at 927 (affirming district court's use of Rule 21 to dismiss nondiverse party); *Ahmed v. Kifle*, 728 F. App'x 934 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 811 (2019) (same); *Byrd v. Howse Implement Co.*, 227 F.R.D. 692, 694 (M.D. Ala. 2005); *see also Chabrowski v. Bank of New York Mellon Tr. Co. NA*, No. CV-17-03867-PHX-DWL, 2019 WL 132350, at *4–5 (D. Ariz. Jan. 8, 2019); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, No. 18ML02814ABFFMX, 2018 WL 5905942, at *8 (C.D. Cal. Sept. 10, 2018).[1]

24.    To determine whether the claims against a defendant should be severed, a court first considers whether the party is "necessary" under Rule 19(a), and thus whether "(1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest

---

[1]    *See also Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 705-07 (D. Md. 2015); *Mayfield v. London Women's Care, PLLC*, No. CIV.A. 15-19-DLB, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015); *McElroy v. Hamilton Cty. Bd. of Educ.*, No. 1:12-CV-297, 2012 WL 1271469, at *2-3 (E.D. Tenn. Dec. 20, 2012); *Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010); *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868, 874 (N.D. Ohio 2009); *DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *2 (N.D. Ohio June 29, 2009); *Pantel v. Gen. Motors, LLC*, No. 19-13219, 2020 WL 5087975 (E.D. Mich. Aug. 27, 2020); *Morris v. Cary's Lake Homeowners Ass'n*, No. 3:16-cv-00880-JMC, 2016 WL 3433733, at *4-5 (D.S.C. June 22, 2016).

in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." *Safeco*, 36 F.3d at 546; *see also Ahmed*, 728 F. App'x at 936.

25.     Here, Council-Oxford is not a necessary party because complete relief is available from Syngenta and Chevron, and determination of this action in Council-Oxford's absence would not prejudice any defendants' rights.  Throughout the Complaint, Plaintiffs allege in conclusory fashion that all Defendants are liable under various theories of product liability, and make no effort to distinguish what, if any, specific relief they are seeking from Council-Oxford.  *See, e.g.*, *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 120-21 (S.D.N.Y. 2015) (dropping non-diverse party where "none of the allegations in the Amended Complaint are attributable only to" that party).  And there is nothing stopping Plaintiffs from obtaining complete relief against Council-Oxford in state court without the presence of Syngenta or Chevron. (Such a prospect is remote, of course, since Chevron and Syngenta are the obvious targets of Plaintiffs' claims.)

26.     Even if Council-Oxford was deemed "necessary" under Rule 19(a), it is a dispensable party under Fed. R. Civ. P. 19.  A judgment rendered in Council-Oxford's absence would not prejudice any party: the resolution of Plaintiffs' claims against Council-Oxford would not resolve or affect their claims against Syngenta or Chevron, and the resolution of Plaintiffs' claims against Syngenta or Chevron would not resolve or affect their claims against Council-Oxford.  *See, e.g.*, *Sullivan*, 117 F. Supp. 3d at 706.  In addition, judgment in the absence of Council-Oxford

would be adequate because each Defendant is, at most, independently liable to Plaintiff. *E.g.*, *Conerly Corp. v. Regions Bank*, No. CV 08-813, 2009 WL 10678997, at *1 (E.D. La. Dec. 9, 2009).

27.     Meanwhile, failing to dismiss Council-Oxford would prejudice Syngenta and Chevron, who are Defendants in consolidated multidistrict litigation concerning paraquat that includes over 250 federal cases in the Southern District of Illinois. *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021). Given the substantial factual overlap between this action and those that have already been approved for consolidation, this case will likely be transferred to the federal MDL.  Transfer and coordination in these proceedings would (1) avoid substantial and duplicative discovery burdens and (2) eliminate the risk of inconsistent pretrial rulings on discovery, dispositive motions to dismiss, summary judgment, and other pretrial matters.  Allowing Plaintiffs' claims against Syngenta and Chevron to proceed in federal court will thus best serve the policy of facilitating "complete, consistent, and efficient settlement of controversies." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968).

28.     Finally, the amount in controversy in this proceeding exceeds $75,000.  A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). The defendant is only required to present evidence supporting that plausible allegation if the allegation is challenged by the plaintiff or the court.  *Id.*  However, the court may review any evidence

submitted with the notice of removal, as well as make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to determine whether the amount in controversy has been met. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

29.     When a plaintiff does not make "a specific demand in the *ad damnum* clause of the complaint, the damages are unspecified, and the preponderance of evidence standard applies." *See Barnes v. JetBlue Airways Corp.*, No. 07-cv-60441, 2007 WL 1362504, at *1, n.1 (S.D. Fla. May 7, 2007). Under this standard, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

30.     While alleged "minor, short-term injuries" are not sufficient to show the amount in controversy absent other evidence, complaints alleging "serious, lasting" injuries are "typically removable." *Hickerson v. Enter. Leasing Co. of Georgia, LLC*, 818 F. App'x. 880, 883 (11th Cir. 2020).

31.     The amount in controversy is met here because Plaintiffs seek substantial monetary damages for physical pain, mental anguish, loss of consortium, and medical expenses as a result of Mr. Williford's diagnosis with a serious long-term illness—Parkinson's disease. Compl. ¶¶ 68-124. Indeed, the cost of Mr. Williford's medical treatment alone likely satisfies the $75,000 requirement. *See* Matthew Gavidia, "Study Details Economic Burden of Parkinson's Disease in the United States," *available at*

https://www.ajmc.com/view/study-details-economic-burden-of-parkinson-disease-in-the-united-states.

32.     The exception to removal based on diversity of citizenship stated in 28 U.S.C. § 1441(b)(2) does not apply because Defendant Council-Oxford has been improperly joined in this proceeding for the reasons explained above, and therefore its citizenship should be ignored for purposes of evaluating jurisdiction. *See supra* ¶¶ 14-27.

### Federal Question Jurisdiction

33.     Removal is proper in the alternative pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiffs' claims present a substantial federal question.

34.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

35.     "[W]hether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).  The artful-pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim."  *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented.").  "In other

words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived*, 132 F.3d at 831.

36.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law.").

### A. Plaintiffs' Claims Implicate a Federal Issue That Is Necessarily Raised, Actually Disputed, Substantial, and Capable of Resolution in Federal Court.

37.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division

of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

38.    Where, as here, purported state law claims are premised on violations of duties governed by a federal statute, these requirements are satisfied and a federal court has jurisdiction over those claims.  *See Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on failure to satisfy standard of care established in federal statute); *see also Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (concluding a federal question was raised where "Plaintiffs' dependence on federal law permeates the allegations such that the [claims purportedly brought under state law] cannot be adjudicated without reliance on and explication of federal law").

39.    As set forth below, all four requirements for federal jurisdiction over Plaintiffs' claims are satisfied.

40.    Although Plaintiffs ostensibly plead claims against Syngenta and Chevron as violations of state law—and allege that such claims are independent of federal law, *see* Compl. ¶ 60—they inevitably base their underlying theory of liability on alleged violations of federal law or alleged duties arising out of FIFRA, *see id.* ¶¶ 50, 52-59, 76-79, 86, 90, 93-97, 103-06, 108, 113, 116, 119-20.

41.    Specifically, the Complaint alleges that Syngenta and Chevron violated duties established by federal law by failing to warn about the risks that

paraquat allegedly posed to human health or failing to instruct users regarding proper methods for handling paraquat-containing products.  *See id.* ¶¶ 58-59, 86, 93-97, 103-05, 119-20.

42.    FIFRA and its implementing regulations are the exclusive source of the asserted legal duties regarding the labeling, handling, and use of paraquat.  *See, e.g.*, 7 U.S.C. § 136(q)(1)(F) (FIFRA empowers EPA to control warnings, directions, and packaging, and specifically mandates warnings that are "adequate to protect health and the environment"); *id.* § 136j(a)(2)(G) (it is illegal to use any pesticide "in a manner inconsistent with its labeling").  Indeed, states are *prohibited* from imposing "labeling or packaging" requirements "in addition to or different from" those required under federal law.  *Id.* § 136v(b); *see also Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459–60 (2012) (holding that such language "sweeps widely—and in so doing … prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the" federal law). Accordingly, Plaintiffs' claims are necessarily governed by the federal requirements under FIFRA and require interpretation and application of that statute, as any additional or different duties would be preempted.

43.    Plaintiffs' theories of liability against Syngenta and Chevron, as pleaded in the Complaint, are thus predicated on allegations that they breached alleged duties owed under FIFRA regarding the distribution and sale of paraquat. Plaintiffs assert, *inter alia,* that Syngenta and Chevron should have included additional or different information on the labels for paraquat-containing products

even though the information on those labels is directly approved by the EPA and federal law prohibits any state law from imposing different requirements. *See, e.g.,* Compl. ¶¶ 93-97.

44.     The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

45.     ***First***, Plaintiffs' claims necessarily require resolution of a federal question—i.e., what obligations and duties did Syngenta and Chevron have under FIFRA to warn about the hypothesized connection between paraquat use and Parkinson's disease.  *See Bd. Of Comm'rs,* 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty contained in federal law); *Hughes*, 478 F. App'x at 170-71; s*ee also North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth. v. Coastal Gen.*

*Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles.").

46.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of the alleged duties arising under FIFRA. Specifically, the parties dispute whether Syngenta and Chevron had an obligation to warn about, or protect the public from, the alleged association between paraquat and Parkinson's disease, despite the fact that the EPA—the expert agency with regard to all pesticides, including paraquat—has concluded that no such connection exists. *See* EPA, Paraquat Dichloride:  Interim Registration Review Decision,  Case  No.  0262,  at  18  (July  13,  2021),  *available  at* https://www.regulations.gov/document/EPA-HQ-OPP-2011-0855-0307.

47.     **Third**, the federal issue presented by Plaintiffs' claim is "substantial." *Gunn*, 568 U.S. at 258.  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."  *Id.* at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260-61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).  "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state

law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

48.    Congress recognized the importance of a nationwide approach to the EPA's regulation of pesticides when it enacted FIFRA.  *See Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205–06 (9th Cir. 2002) ("Congress has afforded the EPA substantial enforcement powers under FIFRA").  FIFRA recognizes the uniquely federal interest in regulating pesticides across the nation and expressly excludes the authority of states to do so.  *See* 7 U.S.C. § 136v(b) (states are prohibited from imposing "labeling or packaging" requirements "in addition to or different from" those required under FIFRA); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) (creating a two-part test for analyzing preemption under FIFRA).

49.    This lawsuit raises a substantial federal question even though FIFRA does not provide for a private right of action.  In *Grable*, the Supreme Court held that the absence of a federal cause of action does not necessarily foreclose federal-question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1018–19, 1024 (determining that the federal issue was substantial even though the underlying federal statute did not include a private right of action where it was

"significant to the development of a uniform body of federal securities regulation");
*Ranck v. Mt. Hood Cable Reg. Comm'n*, No. 16-cv-02409, 2017 WL 1752954, at
*4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable
Communications Policy Act raise substantial federal questions and satisfy *Grable*
despite the absence of a private right of action).

50.     Removal is especially appropriate here because Plaintiffs' action is
one of hundreds of similar actions nationwide, over 250 of which are pending in
the Paraquat MDL in the Southern District of Illinois before the Honorable Nancy
J. Rosenstengel.  *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill.
2021).

51.     **Fourth**, and finally, the federal issue also is capable of resolution in
federal court "without disrupting the federal-state balance approved by Congress."
*Gunn*, 568 U.S. at 258.  Indeed, federal courts are afforded exclusive jurisdiction
to hear challenges to the EPA's authority to enforce FIFRA.  *See* 7 U.S.C. § 136n.
Litigating this case in a state court runs the risk of the state court applying federal
requirements in a manner either in tension or in conflict with the way the federal
agency tasked with enforcing FIFRA—the EPA—applies them.  Federal jurisdiction
is therefore properly exercised to resolve "disputed issues of federal law" under
FIFRA.

52.     In sum, removal of this action is appropriate because Plaintiffs' "state-
law claim[s] necessarily raise a stated federal issue, actually disputed and
substantial, which a federal forum may entertain without disturbing any

congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *Bd. of Comm'rs*, 850 F.3d at 722-23; *Hughes*, 478 F. App'x at 170-71; *NASDAQ OMX Grp.*, 770 F.3d at 1031; *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law.").

### B.   The Court Can Exercise Supplemental Jurisdiction.

53.   If the Court determines that some, but not all, of Plaintiffs' claims implicate a substantial federal question, the Court can evaluate whether to retain the non-federal claims under the doctrine of supplemental jurisdiction which grants jurisdiction over state claims forming part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

54.   It is not necessary to establish that *all* of Plaintiffs' causes of action raise a federal question to establish federal jurisdiction.  Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, "[n]othing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).  Instead, "federal courts' original jurisdiction over federal questions carries with it jurisdiction over

state law claims that derive from a common nucleus of operative fact." *Id.* at 164-65.

55.     Because, as explained above, the Court has original jurisdiction over at least some counts against Syngenta and Chevron, it has supplemental jurisdiction over Plaintiffs' remaining counts against the Defendants, which are so related that they "form part of the same case or controversy."

56.     The presence of state law claims, if any, therefore does not defeat this Court's original jurisdiction over the federal claims.

## OTHER REMOVAL ITEMS

57.     Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined and served must join or consent to removal.  Defendant Council-Oxford has consented to this removal.

58.     By filing this Notice of Removal, Syngenta and Chevron expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.  If any question arises as to the propriety of removal to this Court, Syngenta and Chevron request the opportunity to submit a brief in support of its position that this case has been properly removed and to present oral argument.

59.     Pursuant to 28 U.S.C. § 1446(d), Syngenta and Chevron are contemporaneously filing a Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiffs.

**WHEREFORE**, Syngenta and Chevron remove this action, now pending in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, case number 21-CA-006219, to this Court.


DATED: September 22, 2021

Respectfully submitted,

*/s/ Jennifer Cecil*
Jennifer Cecil (FBN 99718)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
Jennifer.Cecil@huschblackwell.com

*Attorney for Chevron U.S.A. Inc.*

*/s/ Joshua C. Webb*
Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
Joshua C. Webb (FBN 051679)
josh.webb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Boulevard, Suite 3700
Tampa, FL  33602
Telephone:  813-221-3900
Facsimile:  813-221-2900

*Attorneys for Syngenta Crop Protection LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court, and that a copy of the foregoing is being furnished by U.S. Mail and e-mail to counsel for Plaintiffs at the following addresses:

E-Mail
dlopez@lopezlawpa.com
tshah@millerfirmllc.com

Mail
Dennis Lopez, Esq.
210 Pierce Street
Tampa, Florida 33602

Tayjes Shah
The Miller Firm, LLC
108 Railroad Avenue
Orange, Virginia 22960

*s/Joshua C. Webb*
*Attorney*